# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MORGAN STANLEY SMITH BARNEY LLC, et al., | : : : | |
| Petitioners, | : : | CIVIL ACTION |
| v. | : : | NO. 17-05635 |
| STEPHEN T. WALKER, | : : | |
| Respondent. | : | |

## MEMORANDUM

**Joyner, J.**                                                                                          **May 31, 2018**

Presently before the Court are Petitioners Morgan Stanley Smith Barney LLC and Morgan Stanley Smith Barney FA Notes Holdings LLC's Petition to Confirm Arbitration Award (Doc. No. 1), Respondent Stephen Walker's competing Motion to Vacate Arbitration Award and his accompanying Memorandum (Doc. Nos. 28 & 29), Petitioners' Response thereto (Doc. No. 40), and Respondent's Reply thereof (Doc. No. 45). For the following reasons, we GRANT Petitioners' Petition to Confirm and DENY Respondent's Motion to Vacate.

## I. BACKGROUND

Petitioners Morgan Stanley Smith Barney LLC ("Morgan Stanley") and Morgan Stanley Smith Barney FA Notes Holdings LLC ("Notes Holdings") and Respondent Stephen Walker ("Walker") were parties to an arbitration before a panel of arbitrators, commissioned under

1

the Financial Industry Regulatory Authority ("FINRA"), that began in 2010. The three-member arbitration panel entered a final award on November 1, 2017. Petitioners have moved in this Court to confirm the award. In response, Walker has cross-moved to vacate the award.

The parties' dispute dates back to 2001 when Walker joined Morgan Stanley as a financial advisor. As is common in the securities industry, Walker executed two promissory notes with Morgan Stanley for sums of money when he joined the firm. The written terms of these promissory notes provided that the sums owed would be accelerated and become immediately due and payable upon the termination of Walker's employment for any reason.

The relationship eventually soured and Morgan Stanley terminated Walker in May 2010. In September 2010, Morgan Stanley commenced an arbitration against Walker with the FINRA office of Dispute Resolution, Case No. 10-04094, claiming that Walker was obligated to pay Notes Holding the outstanding principal and interest on the two promissory notes. The parties brought two other FINRA arbitrations that were consolidated with Case No. 10-04094. In the first, Case No. 10-04888, Morgan Stanley asserted claims for theft of trade secrets and unfair competition against Walker and Oppenheimer & Co., Inc. In the second, Case No. 11-01780, Walker brought claims for tortuous interference with business relationships, unfair competition, improper conversion of

2

property, and defamation against Morgan Stanley and Daniel Thompson, who was the manager of Walker's branch at Morgan Stanley.

Evidentiary hearings began before the panel of arbitrators on April 22, 2014. The evidentiary hearings were held in Philadelphia and continued until September 25, 2017.

Relevant to his current Motion to Vacate, Walker presented the panel with a motion that claimed Morgan Stanley and Thompson committed spoliation. Walker did so through a motion filed on April 2, 2014, for "(1) a finding of spoliation and for sanctions; and (2) to compel discovery and for sanctions for discovery abuses." (Walker Mem. (Doc. No. 29), Ex. I ("Spoliation Mot.")). This was a lengthy motion that laid out Walker's allegations, supporting evidence, and legal arguments. Id. The core allegation underlying Walker's spoliation claim was that Thompson and Morgan Stanley destroyed a large amount of physical and electronic files that Walker maintained in his office at Morgan Stanley. It is worth adding that Morgan Stanley also presented to the panel its own spoliation claim against Walker.

In his spoliation motion, Walker specifically requested that the panel hold a separate hearing on his spoliation claim before the commencement of the evidentiary hearings, which were scheduled to begin just a few weeks later. Id. at 30. Walker noted that "[c]ourts routinely hold separate evidentiary hearings prior to trial on the issue of spoliation." Id. (citing Victor v. Lawler,

3

520 F. App'x 103, 105 (3d Cir. 2013); <u>Bozic v. City of Washington</u>, 912 F. Supp., 257, 259 (W.D. Pa. 2012)). Walker insisted that holding a preliminary hearing would be more efficient than considering his spoliation claim along with the parties' core claims during the hearings. <u>Id.</u> at 31. Walker further argued that "if the Panel finds that spoliation did occur, it should be determined prior to the hearing since any sanctions ordered by the Panel could affect the merits hearing." <u>Id.</u>

On April 18, 2014, the arbitration panel entered an Order that deferred judgement on Walker's spoliation claim, without prejudice, until the panel determined that it should be decided. (Pets. Resp., Ex. B (Doc. No. 40)). The arbitrators also denied Walker's request for a separate, preliminary hearing on his spoliation claim. <u>Id.</u>

The record shows that both parties presented evidence to the arbitrators regarding Walker's spoliation claim during the evidentiary hearings. For example, Walker's attorney questioned Thompson on the events underlying Walker's spoliation claim. (<u>See e.g.</u>, Pets. Resp., Ex. C). Walker's attorney also solicited testimony from Walker regarding the same. (<u>See</u> e.g., Walker Mem., Ex. G at 2750-57). In addition, Walker's post-hearings submission again detailed his spoliation claim.

In its final award, the arbitrators awarded Notes Holdings a total award against Walker of $1,951,587.85. The arbitrators

4

awarded Walker damages against Morgan Stanley in the amount of $525,000, which was offset by $15,000, the amount in which the arbitrators held Walker was liable to Morgan Stanley. The panel also awarded Thompson $10,000 against Walker.

Along with these damages awards, the panel also addressed Walker's spoliation claim. Specifically, in the final award, the panel denied "Walker's request for spoliation damages." (Walker Mem., Ex. E ("Arbitration Award") at p. 7). The panel also denied "[a]ny and all relief not specifically addressed herein." Id.

Because Walker has yet to satisfy the panel's award, Morgan Stanley and Notes Holdings have moved in this Court to confirm the award. In response, Walker has moved to vacate it. Walker argues that we should vacate the award because the arbitrators failed to sufficiently address his claim for spoliation, thereby disregarding a clearly established legal principle and stripping him of a fundamentally fair proceeding.

In support of his position, Walker claims the arbitration panel "completely ignored" his spoliation claim. (Walker Mem. at 17). Walker further claims that the arbitrators "never actually did anything about it, despite Walker's counsel repeatedly imploring them to do so."[1] (Walker Reply at 7 (Doc. No. 45)).

---

[1] We note that the record evidence Walker cites does not support his claim that his counsel made repeated requests to the arbitration panel to address his spoliation claim. While the record shows that Walker's attorney mentioned the spoliation issue multiple times throughout the proceedings, it can hardly be said that in each instance Walker's attorney implored the panel for a ruling.

Moreover, Walker claims that the relief he requested would only have been "effective" if it was "granted <u>in advance</u> of the arbitration hearing on the merits of the claims." (Walker Mem. at 20 (emphasis original); <u>see also</u> Walker Reply at 16 ("Common sense and a fundamental sense of fairness would at least require that the arbitrators address these spoliation issues <u>in advance of the merits hearings</u> - where these issues could be most effectively addressed." (emphasis original))).

**II. DISCUSSION**

This dispute is governed by the Federal Arbitration Act ("FAA"). "Under the FAA, agreements to arbitrate are enforceable to the same extent as other contracts, and federal law looks favorably upon the enforcement of arbitration agreements." <u>Merrill Lynch, Pierce, Fenner & Smith Inc. v. Milnes</u>, No. 11-260, 2014 WL 1386321, at *2 (E.D. Pa. April 8, 2014) (citing <u>Harris v. Greentree Fin. Corp.</u>, 183 F.3d 173, 178 (3d Cir.1999)). The FAA provides the following regarding the enforcement of arbitration awards:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made, any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified or corrected as prescribed in sections 10 and 11 of this title [9 U.S.C. §§ 10, 11]. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.

6

9 U.S.C. § 9.

## A. Arbitrator Misconduct

Walker brings his challenge under Section 10(a) of the FAA, which provides the grounds under which an arbitration award may be vacated. This Section provides:

> (a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration--
> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

When presented with a motion to vacate, we must keep in mind the proper standard under which we review an arbitration award. "In light of the FAA and common law, court review of arbitration awards are 'extremely deferential' and presents a high hurdle for the party challenging the award." Smith, 2009 WL 426175, at *2 (citing Dluhos v. Strasberg, 321 F.3d 365, 370 (3d Cir.2003)). "The Third Circuit has held that vacatur is appropriate only in 'exceedingly narrow circumstances.'" Id. (citing Dluhos, 321 F.3d at 370). "Hence, the listed justifications for vacatur in 9 U.S.C.

7

§ 10(a) will be strictly construed in line with this Court's extreme deference to the arbitration award." Id.

Walker provides no evidence that the arbitrators' decision was the product of corruption, fraud, or undue means. Nor does he argue that the decision was rendered by partial or corrupt arbitrators, that the arbitrators were guilty of misconduct in refusing to postpone a hearing, or that the arbitrators refused to hear evidence pertinent and material to the controversy.

Instead, Walker argues that the award should be vacated because the arbitrators' handling of his spoliation claim was so egregious that it constitutes "other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3). Walker attacks the panel's decision to not rule on his spoliation claim until the end of the proceedings. Walker claims that the panel did not address the claim in any of the merits hearings. Lastly, citing the panel's denial of his "request for spoliation damages," rather than his requested sanctions, Walker claims that the "arbitrators completely misunderstood the relief that Walker was requesting." (Walker Reply at 19-20).

Of course, we do not "revisit, reinterpret, or overrule [an] arbitrator's legal or factual analysis." Teamsters Local 312, 118 F.3d at 995. "The correctness of the arbitrator's substantive conclusion [is] not under scrutiny." Id. Accordingly, we will not vacate simply because we believe that the arbitrators should have

8

considered Walker's spoliation claim in a preliminary hearing, or because we believe that the arbitrators should have ultimately determined Morgan Stanley and Thompson did commit spoliation. We instead analyze whether the arbitrators provided Walker a fundamentally fair hearing. Sherrock Bros., Inc. v. DaimlerChrysler Motors Co., LLC, 260 Fed. App'x 497, 501 (3d Cir. 2008).

The Third Circuit has held that a "fundamental procedural error" resulting in a "fundamental unfairness" to one of the arbitrating parties can justify vacatur under Section 10(a)(3). Teamsters Local 312 v. Matlack, Inc., 118 F.3d 985, 995 (3d Cir. 1997). For example, in Teamsters Local 312, the Third Circuit affirmed vacatur when the arbitrator ruled on the merits of the case without one party's evidence or argument, thereby impeding that party's "right to notice and opportunity to be heard in such an adversarial proceeding." Id. at 996. The Court noted that the arbitrator's error "is precisely the type of procedural error that undermines the validity of the arbitration process." Id. (internal quotation and alternation omitted).

Short of fundamental procedural errors, it is important to remember that arbitrators have wide latitude in how they conduct the proceedings. Century Indem. Co. v. Certain Underwriters at Lloyd's, London, 584 F.3d 513, 558 (3d Cir. 2009) (citing Lessin v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 581 F.3d 813, 861

9

(D.C. Cir. 2007)). Despite this, Walker argues "preliminary hearings on spoliation issues, in advance of the ultimate trial on the merits, are routinely held." Mot. at 16 (citing Victor v. Lawler, 520 Fed. App'x 103, 105 (3d Cir. 2013)). However, more is needed for vacatur than an arbitration panel not following the routines of a federal court. Walker had the opportunity to convince the arbitration panel of Morgan Stanley's alleged spoliation and the need to rule on that issue before the merits hearings began. Simply because he was not successful in doing so does not render the proceedings fundamentally unfair.

The record is clear that the panel did in fact entertain briefing and testimony regarding Walker's spoliation claim. The panel specifically addressed Walker's spoliation claim in its final award, and if there was any doubt, the panel also denied any relief that it did not specifically grant. Needless to say, the panel's handling of Walker's spoliation claim falls far short of the error present in Teamsters Local 312.

Quite simply, even if there was some degree of error, the panel's handling of Walker's spoliation claim is not "the type of procedural error that undermines the validity of the arbitration process." Teamsters Local 312, 118 F.3d at 996 (internal quotation and alternation omitted). We cannot find that the panel is guilty of misbehavior that prejudiced Walker. We therefore refuse to vacate the award on this ground.

**B.   Manifest Disregard of the Law**

Walker next argues that the arbitration panel's handling of his spoliation motion amounts to a manifest disregard of the law.

Before the Supreme Court's decision in Hall Street Assocs., LLC v. Mattel, Inc., 552 U.S. 576 (2008), the Third Circuit recognized a judicially created reason for vacating an award if it was made in "manifest disregard of the law." Merrill Lynch, Pierce, Fenner & Smith Inc. v. Milnes, No. 11-260, 2014 WL 1386321, at *3 (E.D. Pa. April 8, 2014). While other circuits remain split, the Third Circuit has yet to decide whether "this standard survived the Supreme Court's conclusion in Mattel that the Federal Arbitration Act provides the 'exclusive grounds' for vacating an arbitral award." Whitehead v. The Pullman Group, LLC, 811 F.3d 116, 120 (3d Cir. 2016). We need not choose a side at the moment because, even assuming this is a valid ground for vacatur, Walker has failed to establish that the arbitration proceedings exhibited a manifest disregard of the law.

As the Third Circuit recognized before Mattel, to vacate an arbitration award under this standard, the petitioner must establish that the arbitrator "(1) knew of the relevant legal principle, (2) appreciated that this principle controlled the outcome of the disputed issue, and (3) nonetheless willfully flouted the governing law by refusing to apply it." Smith, 389 Fed. App'x at 177. "The manifest disregard standard requires more

11

than legal error." Whitehead, 811 F.3d at 121. Instead, the arbitrator's decision "must fly in the face of clearly established legal precedent." Id.

Walker has failed to establish the threshold issue that the arbitration panel committed legal error. While FINRA Rules permitted the arbitrators to hold a preliminary hearing on Walker's spoliation claim, they did not require one. FINRA Rules 13501, 13503. Even in his current Motion to Vacate, Walker has not pointed to legal precedent establishing that it was error for the panel to entertain evidence regarding his spoliation claim during the evidentiary hearings, rather than at a preliminary hearing, or impose an adverse inference at the end of the hearings, if one was warranted, rather than at the beginning.

Moreover, we find that Walker did not present the panel with clearly established legal precedent requiring that it hold a preliminary hearing on his spoliation claim. In his spoliation motion, Walker dedicated a single paragraph to his request that the panel consider the issue in a preliminary hearing. (Spoliation Mot. at 30-31). The only legal authority Walker cited was in support of the proposition that "[c]ourts routinely hold separate evidentiary hearings prior to trial on the issue of spoliation." Id. (citing Victor v. Lawler, 520 F. App'x 103, 105 (3d Cir. 2013); Bozic v. City of Washington, 912 F. Supp., 257, 259 (W.D. Pa. 2012)). Walker went on to suggest that a preliminary hearing

12

"would be more expeditious," and that sanctions could affect the merits hearing. Id. In considering these arguments that Walker presented to the panel, they fall far short of clearly established legal precedent requiring a preliminary hearing.

In this case, the arbitration panel permitted Walker to submit a brief on his spoliation claim, denied ruling on the claim until it heard relevant evidence during the evidentiary hearings, permitted Walker to again brief his claim in his post-hearing submission, and ultimately issued a ruling evidencing that the panel contemplated his spoliation claim. "In the end, as long as there is a barely colorable justification for the arbitrators' decision[,] it is to be upheld." Popkave v. John Hancock Distributors LLC, 768 F. Supp. 2d 785, 790 (E.D. Pa. 2011) (internal quotation omitted).

Accordingly, even if we were to hold that a "manifest disregard of the law" remains a valid ground to vacate an arbitration award, we would not arrive where Walker wants us to go. He has failed to demonstrate legal error on behalf of the arbitrators, much less one that would rise to the level of a manifest disregard of the law.

**C. Confirmation of the Arbitration Award**

As noted above, "[u]nder the FAA, agreements to arbitrate are enforceable to the same extent as other contracts, and federal law looks favorably upon the enforcement of arbitration agreements."

13

Milnes, 2014 WL 1386321, at *2.  Section 9 of the FAA provides the procedure and grounds that a party must satisfy to confirm an arbitration award.  Under this Section, an arbitrating party may move to confirm an award in the United States District Court for the district wherein the award was made, unless the arbitration agreement specifies otherwise.  9 U.S.C. § 9.  Section 9 also provides that a party to an arbitration must move to confirm the award within one year from the date on which it was made.  Id.  Lastly, Section 9 mandates that the court confirm the award unless the court vacates, modifies, or corrects it pursuant to the provisions of Sections 10 and 11 of the FAA.  Id.

We start by noting that the promissory notes signed by Walker required that all disputes thereunder be adjudicated in a FINRA arbitration.  The panel of FINRA arbitrators issued its award on November 1, 2017, and Petitioners have moved to confirm the award well within the one-year requirement.  In addition, Petitioners have properly moved to confirm the award before this Court because the award was made within this district and the promissory notes did not obligate Petitioners to move elsewhere.  Lastly, we are bound to confirm the award because we do not vacate, modify, or correct it.  Id.; see Milnes, 2014 WL 1386321, at *1-6.

**III. CONCLUSION**

For the foregoing reasons, we DENY Walker's Motion to Vacate and GRANT Petitioners' Petition to Confirm.  Pursuant to FINRA Rule

13904(j), we apply a six-percent per annum interest rate to the unpaid monetary awards from the date of the award. See <u>Milnes</u>, 2014 WL 1386321, at *5.

An appropriate Order follows.